IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TONY WHEELER,

                                      OPINION AND ORDER

            Plaintiff,

                                      19-cv-720-bbc

    v.

UNIVERSAL RECYCLING TECHNOLOGIES,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Tony Wheeler alleges that his former employer, defendant Universal Recycling Technologies, disciplined him and terminated him from his job because of his race and because he complained about race-based abuse from his supervisor. He filed this lawsuit under Title VII of the Civil Rights Act of 1964, contending that defendant discriminated and retaliated against him in violation of the Act. Defendant has filed a motion for summary judgment, alleging that it fired plaintiff because of his inappropriate work behavior, and not because of his race or any protected conduct. Dkt. #22. I will grant defendant's motion because plaintiff has failed to present evidence from which a reasonable jury could conclude that defendant disciplined or fired him because of his race or protected conduct.

UNDISPUTED FACTS

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed unless otherwise noted.

Plaintiff Tony Wheeler worked for defendant Universal Recycling Technologies in

1

Janesville, Wisconsin, from January 2018 until he was terminated in July 2018. Defendant's Janesville facility is an electronics recycling facility. Plaintiff worked in a general production position at the facility, which meant that he processed and sorted televisions, computers and other assorted electronics on the shop floor. He also performed other duties on the shop floor, including cleaning up the area in the plant where materials were shredded and moved on a conveyer belt into dumpsters. Plaintiff used a shovel to collect shredded materials that had fallen off the conveyer belt onto the floor. Plaintiff's direct supervisor was Maciej Salach, an operations supervisor. Salech's supervisor was Randy Call, the corporate production manager.

Plaintiff worked on the shop floor with Jose Negron, a lead worker who is Latino. Plaintiff, who is black, thought that Negron treated him poorly because of his race. He thought that Negron made him work more than employees who were Latino. Plaintiff also states that Negron called black people "lazy." Plaintiff told Salech, his supervisor, about the problems he was having with Negron. On July 19, 2019, plaintiff also told Call, the corporate production manager, that Negron and Negron's fiancée bullied him and made him complete jobs that should have been done by others. Call stated that plaintiff should talk to his supervisor.

On July 26, 2018, plaintiff and lead worker Negron had an argument at work. Plaintiff had taken a lunch break at 6:00 p.m. When he returned, he saw that there was a large mess on the floor around one of the conveyers in the shred area on the shop floor. Plaintiff pulled the emergency stop on the conveyer so that the mess could be cleaned up.

Plaintiff was angry about the mess, and thought that it had been caused deliberately. He began cleaning it up with a shovel. Negron wanted the mess cleaned up quickly so that the machinery could be restarted, and he asked plaintiff why another employee (Jeremy Spencer) was not helping plaintiff clean up the mess. Plaintiff replied that he did not need any help. Negron eventually took the shovel from plaintiff to finish the cleanup, because he thought that plaintiff was working too slowly. (According to defendant, plaintiff started swearing and insulting Negron. Plaintiff denies calling Negron names. He states that Negron became angry and lifted the shovel as if he was going to strike plaintiff with it.)

(The parties submitted video footage of the incident. The footage does not have audio, but the video shows plaintiff and Negron speaking while plaintiff shovels garbage into a dumpster. Negron then takes the shovel from plaintiff and begins to shovel the mess from the floor and into the dumpster more quickly than plaintiff had been doing. The video does not show Negron brandishing, threatening or attempting to hit plaintiff with the shovel.)

After Negron took over the shoveling, plaintiff reported to his supervisor, Salach, that Negron had threatened him with a shovel. Plaintiff told Salach that he wanted to file a complaint about the incident. Salach shook his head and laughed. Plaintiff then called the human resources hotline and Call, and left messages accusing Negron of acting as if he was going to hit him with a shovel. Later that day, plaintiff submitted an employee allegation resolution form to defendant, complaining about the incident with Negron. Plaintiff alleged that during an argument, Negron had raised a shovel and "cocked it" as if he was going to strike plaintiff with the shovel. Dkt. #25-4.

3

Defendant opened an investigation into plaintiff's allegations. Salach interviewed Negron and two other employees who were working on the shop floor at the time of the incident. Negron's account of the incident was completely different from plaintiff's; the other two employees had not seen the interaction between plaintiff and Negron. Salach also reviewed the camera footage of the incident and concluded that the footage did not support plaintiff's allegations. Salach reported his findings to Wendy Feggestad, the human resources director for defendant.

On July 31, Feggestad and Salach interviewed plaintiff about the incident. During the interview, plaintiff accused Feggestad and Salach of lying about what was on the video footage to protect Negron. Plaintiff said to Feggestad and Salach: " you are all going down"; "God will judge you"; and "karma is going to bite you in the ass." (Defendant says that plaintiff used a lot of profanity in angry outbursts, including calling Salach a "motherfucker." Plaintiff denies using profanity.) After the discussion, Feggestad contacted plaintiff's parole agent. She told him that defendant would be willing to continue employing plaintiff if he could correct his behavior and do his job without engaging in threats and profanity. Feggestad said that if plaintiff continued his misconduct, he would be discharged.

On August 13, Salach and Call met with plaintiff to tell him that the investigation into his allegation was complete. They told plaintiff that because plaintiff's and Negron's reports were inconsistent and neither the video footage nor other employees could confirm plaintiff's allegation, the investigation would be closed and defendant would not discipline either employee. Salach and Call asked plaintiff to sign a resolution form, but he refused.

Salach and Call also provided plaintiff a "Statement of Understanding," stating that he had engaged in insubordination and disrespectful conduct during his interactions with Salach and Feggestand by making threats and using inappropriate language. According to the statement, plaintiff was to confirm that: "I understand failure to adhere to the points listed above will result in progressive discipline up to and including termination of employment." Plaintiff refused to sign the Statement of Understanding.

On October 12, 2018, three employees reported to Call that they had been laughing among themselves when another employee started yelling at them and saying that they should not laugh at people. The employees stated that they were not laughing at the other employee, but the employee kept yelling at them. Call determined that the individual was plaintiff and asked a supervisor to bring plaintiff to the office. Plaintiff came to the office but he crossed his arms and refused to talk to Call about the incident. (Defendant says that plaintiff told Call that Call "don't mean nothing to me," and then puffed out his chest, smiled and said, "What are you going to do now? Fire me? Go ahead, fire me." Plaintiff denies puffing out his chest or telling Call to fire him. He says that he told Call that he did not trust him.) Call called Feggestad by phone and told her that he intended to discharge plaintiff. Call then told plaintiff that he was terminating plaintiff's employment.

## OPINION

Plaintiff was granted leave to proceed on claims that defendant gave him the Statement of Understanding and terminated him because of his race and because he had

complained about a racially motivated assault by another employee. To succeed on his discrimination claim under Title VII, plaintiff must submit evidence showing that defendant took an adverse employment action against him because of his race. Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016); Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). To succeed on his retaliation claim, a plaintiff must submit evidence showing that he engaged in an activity protected by Title VII and that defendant took an adverse action against him as a result. Alamo v. Bliss, 864 F.3d 541, 555 (7th Cir. 2017); Burton v. Bd. of Regents, 851 F.3d 690, 695 (7th Cir. 2017); Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty., 804 F.3d 826, 833 (7th Cir. 2015).

Defendant argues that plaintiff cannot prove his discrimination or retaliation claims. I agree. The undisputed evidence shows that defendant provided plaintiff the disciplinary warning and later terminated him because of his inappropriate workplace behavior, and not because of his race or protected conduct. Plaintiff concedes that he behaved unprofessionally during his July 31 meeting with Feggestad and Salach. Although he denies name-calling and denies using profanity, he admits that he accused Feggestad and Salach of lying, and told them that they were "going down," that God would "judge them," and that "karma [was] going to bite [them] in the ass."

Plaintiff also concedes that he refused to talk to Call after three employees accused him of yelling at them. Instead, plaintiff crossed his arms and, according to his version of events, told Call that he did not trust him. Because plaintiff was refusing to cooperate, and because he had recently been warned about his behavior, Call decided to terminate his employment. No reasonable jury could conclude that Call's decision was based on plaintiff's

race or on any protected conduct.

Plaintiff defends his language and behavior by stating that Call, Feggestad and Salach failed to investigate his allegations of assault and bullying by Negron. But again, the evidence does not support plaintiff's assertions. Salach interviewed Negron and two other employees about plaintiff's allegations, and he reviewed video footage of the incident. He concluded reasonably that plaintiff's allegations could not be corroborated. The court's own review of the video footage confirms Salach's conclusion. Despite plaintiff's assertions to the contrary, the video footage does not show Negron threatening plaintiff with a shovel.

Plaintiff also points to Negron's actions of bullying and using racist insults. However, Negron was not involved in the decisions to discipline or terminate plaintiff. Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1010 (7th Cir. 2000) ("[S]tatements by a nondecisionmaker do not satisfy a plaintiff's burden of proof in an employment discrimination case."); Lucas v. Chicago Transit Authority, 367 F.3d 714, 730 (7th Cir. 2004) ("Generally speaking, comments by a non-decision maker do not suffice as evidence of discriminatory intent."). And plaintiff has not shown that the actual decisionmaker—Call—was influenced in any way by Negron or by Negon's allegedly racist comments and opinions. Schandelmeier-Bartels v. Chicago Park District, 634 F.3d 372, 379 (7th Cir. 2011) (jury may infer "that another employee's impermissible bias infected a decision" only if "plaintiff is able to show that the biased employee had some degree of influence over the ultimate decision").

In sum, plaintiff's evidence is not sufficient to create a genuine dispute of material fact as to the reasons defendant terminated his employment. Therefore, plaintiff has failed

to provide a basis for finding intentional discrimination or retaliation.

## ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Universal Recycling Technologies, dkt. #22, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 27th day of May, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge